```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE


Tina Ann Robitaille,

     v.                                Civil No. 15-cv-258-JL
                                       Opinion No. 2016 DNH 121
Carolyn Colvin,
Acting Commissioner,
Social Security Administration
```

**ORDER ON APPEAL**

Tina Ann Robitaille has appealed the Social Security Administration's ("SSA") denial of her application for Social Security disability benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite several severe impairments, Robitaille retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council twice granted Robitaille's request for review of prior decisions, see id. § 404.967, each time vacating the ALJ's decision and remanding for further proceedings. The Appeals Council denied Robitaille's latest request for review, with the result that the ALJ's third decision became the final decision on Robitaille's application, see id. § 404.981. Robitaille then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Robitaille has moved to reverse the decision, see L.R. 9.1(b), contending that the ALJ erred in her analysis of Robitaille's mental impairments, migraine headaches, and credibility, at steps two and four of her analysis.  The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision.  See L.R. 9.1(e).  After careful consideration, the court grants the Acting Commissioner's motion to affirm (and denies Robitaille's motion to reverse) the ALJ's decision.

I.  **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The court will uphold the ALJ's decision if it is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  Though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## II.   Background[1]

The ALJ invoked the requisite five-step process in assessing Robitaille's request for disability benefits.  See 20 C.F.R. § 416.920.  After concluding that Robitaille had not engaged in substantial gainful activity during the period between the alleged onset of her disability on September 22, 2009, and the date she was last insured, December 31, 2012, the ALJ analyzed the severity of Robitaille's impairments.  The ALJ concluded that Robitaille suffers from three severe physical impairments:  degenerative disk disease, fibromyalgia, and migraine headaches.  Admin R. at 23.  After reviewing Robitaille's treatment records, her own statements, and opinions from several consultants and treating providers, the ALJ concluded that Robitaille's mental impairments -- adjustment disorder and pain disorder -- caused no more than "mild limitation[s]" on Robitaille's activities of daily living, social functioning, and concentration, persistence, and pace, and that Robitaille experienced no episodes of decompensation of extended duration, and thus were not severe.  See 20 C.F.R. § 1520a; id. at Pt. 404, Subpt. P, App. 1.

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (document no. 10) is incorporated by reference.  See L.R. 9.1(d).

3

At the third step, the ALJ found that Robitaille's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.  See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  She did not consider Robitaille's alleged mental impairments at that step.  The ALJ then concluded that Robitaille retained the RFC to perform unskilled or semi-skilled light work.  Finally, finding that Robitaille was unable to perform her past, relevant work as an insurance sales agent, see 20 C.F.R.§ 404.1565, the ALJ continued to step five, where she concluded that Robitaille could perform jobs that exist in significant numbers in the economy.  Therefore, the ALJ found, Robitaille was not disabled within the meaning of the Social Security Act.

**III.  Analysis**

Robitaille challenges the ALJ's analysis on four fronts.  First, Robitaille contends that the ALJ erred by failing to properly evaluate her mental impairments when assessing her RFC.  Second, Robitaille argues that the ALJ erred by failing to consider and account for the impact of Robitaille's migraine headaches, which the ALJ found to be a severe impairment, on her ability to sustain work-related activities.  Third, Robitaille maintains that the ALJ erred in evaluating her subjective complaints and credibility.  Finally, Robitaille contends that

the Acting Commissioner failed to sustain her burden at step five of the process. Addressing each of these in turn, the court concludes that the ALJ did not err in crafting Robitaille's RFC nor in evaluating her subjective complaints and credibility.

### A.  Mental impairments

Robitaille challenges the ALJ's conclusion that she does not suffer from a severe mental impairment and that her mental impairments did not impact her RFC. As to the first point, if the ALJ erred in failing to find that Robitaille suffered from severe mental impairments at step two, such error would be harmless, because the ALJ found that Robitaille suffered from other severe impairments and continued to the next step. See McDonough v. S.S.A., 2014 DNH 142, 27 ("[A]n error in describing a given impairment as non-severe is harmless so long as the ALJ found at least one severe impairment and progressed to the next step of the sequential evaluation.").

The court therefore proceeds to consider whether the ALJ erred in crafting an RFC that does not appear to account for Robitaille's alleged mental impairments. In crafting an RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Stephenson v. Halter, 2001 DNH 154, 4-5. Robitaille

contends that the ALJ erred by failing to reflect in her RFC the conclusion that Robitaille had "at least moderate concentration, persistence, or pace difficulties . . . ." Plaintiff's Mem. (document no. 8) at 4. In support of this argument, Robitaille challenges the ALJ's treatment of the medical opinion evidence with respect to her mental impairments.

Both Dr. Tingley, a medical expert who testified at one of the administrative hearings, and Dr. Craig Stenslie,[1] the state agency consultant who reviewed Robitaille's records, concluded that Robitaille had mild restrictions of activities of daily living and moderate difficulties in maintaining concentration, persistence, or pace. Admin R. at 89, 854. Dr. Stenslie also opined that Robitaille had mild difficulties in maintaining social functioning. Id. at 854. An evaluating psychologist, Dr. Janet Levenson, concluded that Robitaille had "mild impulsivity issues that negatively impact accuracy in completing tasks." Admin. R. at 826. These opinions, Robitaille contends, require the ALJ's RFC to account, in some manner, for her difficulties in maintaining concentration, persistence, or pace.

The record, however, reflects that the ALJ did account for Robitaille's mental impairments. The ALJ considered and acknowledged the opinions of Drs. Tingley and Stenslie with

---

[1] The ALJ and, perhaps as a result, both parties, referred to Dr. Stenslie as "Dr. Stensile."

6

respect to Robitaille's difficulties, but afforded those opinions only moderate weight as inconsistent with treatment notes indicating that, as a baseline, Robitaille "presented with normal attention and concentration, which is not consistent with a moderate limitation in this domain." Admin. R. at 27. The ALJ further noted that Dr. Stenslie relied, in part, on the opinion of Dr. Levenson, an examining source, whose conclusion that Robitaille "has mild impulsivity issues that negatively impact accuracy in completing tasks" was not supported by documentation anywhere else in the record. Admin. R. at 27. Finally, the ALJ cited Robitaille's daily activities as the basis for her conclusion that Robitaille "was able to sustain the attention and concentration" necessary for performing those activities, which "are not consistent with a moderate limitation in this domain." Admin R. at 27.

Next, Robitaille contends that the ALJ should have given more weight to the opinion of Robitaille's treating neurologist, Dr. Vijay Thadani, and Registered Nurse Kim Keaton. RN Keaton opined that symptoms of Robitaille's depression, anxiety, and somatoform disorder would "occasionally" "interfere with attention and concentration needed to perform even simple work tasks." Admin. R. at 922. Dr. Thadani similarly opined that symptoms from Robitaille's anxiety and from psychological factors affecting her physical condition would so interfere

7

"frequently." Id. at 993. The ALJ considered these opinions and afforded them little weight. The ALJ noted several inconsistencies between RN Keaton's opinions and the record. Admin R. at 30-31. As for Dr. Thadani, the ALJ noted his opinion that Robitaille was capable of low-stress work and that his opinion as to the frequency of symptoms interfering with Robitaille's attention and concentration was inconsistent with his observations that Robitaille's "neurological examination was essentially normal," Admin R. at 31-31.

In sum, the ALJ considered the evidence concerning Robitaille's mental impairments and their impact on her ability to work when crafting her RFC. The court accordingly cannot conclude that the ALJ failed to weigh that evidence.

### B. Migraine headaches

Robitaille also challenges the ALJ's RFC on a second ground. She contends the ALJ failed to account for the effects of her migraine headaches -- despite concluding that they constituted a severe impairment -- because the ALJ "simply fails to explain how Ms. Robitaille could work during those one or two days per week that she was experiencing a severe migraine." Plaintiff's Mem. (document no. 8) at 9.

Though the ALJ's treatment of the impact of Robitaille's migraines on her RFC assessment is light, it is present, and it

8

is supported by substantial evidence in the record.  The ALJ evaluated several opinions, including those of Registered Nurse Kim Keaton and Dr. Thadani, both of whom treated Robitaille.  Dr. Thadani, Robitaille's treating neurologist, consistently opined that it was "undeterminable" and "unknown" how often Robitaille would miss work.  Admin. R. at 996, 1042, 1058.  As the ALJ noted, while RN Keaton opined in 2007 that Robitaille's impairments were "likely to produce 'good days' and 'bad days'," she did not indicate how often Robitaille would be absent from work as a result.  Admin. R. at 30, 798.  In 2013, Keaton opined that Robitaille would be absent from work, as a result of her impairments, "[m]ore than four days per month," without -- as the ALJ noted -- any explanation for the discrepancies in her opinion.  Admin. R. at 31, 925.  The evaluation of a state agency consultant, Dr. Ray, did not address the question of whether Robitaille would miss days due to her migraines.

  The medical evidence of record upon which the plaintiff relies all stems from Dr. Thadani's treatment notes in 2014 and his opinion rendered the same year.  While those observations support the ALJ's conclusion designating Robitaille's migraine headaches a "severe impediment," see Admin R. at 1033, 1054, 1065, as the Acting Commissioner points out, they offer no more support for a conclusion that Robitaille would miss days at work than the medical opinions and other evidence considered by the

9

ALJ.  The ALJ also noted that, on a regular basis, Robitaille denied having headaches.  See Admin. R. at 34, 36; see also id, at 866, 913, 934, 938, 941.

This leaves Robitaille's testimony and that of her daughter, Jessica Easton as the source of the conclusion that Robitaille would miss work, and how often she would do so.  For the reasons discussed infra Part III.C, the ALJ did not err when she found Robitaille's subjective complaints less than credible.  She also did not err in discounting the persuasive value of Eaton's testimony, in light of Eaton's relationship with Robitaille and the inconsistencies that the ALJ identified between Eaton's reports of Robitaille's symptoms and those of Robitaille and Robitaille's treating providers.  Admin. R. at 36.

Accordingly, the court concludes that the ALJ did not err in her analysis of Robitaille's migraine headaches when crafting the RFC.

### C.  Subjective complaints and credibility

Robitaille next contends that the ALJ's decision to discount the credibility of Robitaille's testimony concerning the intensity, persistent, and limiting effects of symptoms attributable to her headaches, fibromyalgia, and spinal disorder, was not supported by substantial evidence.  The ALJ is

10

required "to evaluate the credibility of a claimant's testimony about [his] symptoms and their limiting effect in light of all the other evidence of record, rather than to simply accept the testimony as true." Scanlon v. Astrue, 2013 DNH 088, 15 n.4. And that determination is entitled to deference, especially when supported by specific evidence in the case record. Simmons v. Astrue, 736 F. Supp. 2d 391, 401 (D.N.H. 2010) (citing Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)). Even though more than one conclusion could be drawn from the evidence in the record, the ALJ's credibility determination will be upheld so long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz, 955 F.2d at 769 (quotation marks omitted).

As Robitaille observes, the ALJ evaluates subjective complaints according to SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (S.S.A. 1996), which "outlines a specific staged inquiry that consists of the following questions, in the following order:  (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective

11

medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?" Comeau v. Colvin, 2013 DNH 145, 21 (internal quotations omitted); see also 20 C.F.R. § 404.1529. Here, the ALJ concluded that Robitaille's underlying impairments crossed the threshold of the first question, in that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded at the second and third steps that Robitaille's statements about her symptoms were not credible. Admin. R. at 29. In support of the latter conclusions, the ALJ cited test findings and clinical observations suggesting that Robitaille put forth "variable levels of physical effort, which suggest[ed] that [she] may be able to do more physically than was demonstrated during testing." Admin R. at 32. The ALJ further cited to specific instances of discrepancies between Robitaille's reported "subjective tolerances versus actual tolerances" observed during testing. Id. at 32-33. Finally, the ALJ discounted Robitaille's credibility based on her own reported activities of daily living, including caring for animals, doing laundry and household chores, paying bills, using the computer, and doing the majority of the housework. Admin R. at 36.

It is the ALJ's prerogative to weigh this evidence and draw conclusions from it, see Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). Such conclusions permissibly include negative

12

conclusions about the claimant's credibility. Mason v. Astrue, 2013 DNH 013, 14; see also St. Pierre v. Shalala, No. 94-232, 1995 WL 515515, at *3 (D.N.H. May 25, 1995) ("When evaluating the subjective claims of pain it is proper and, indeed, required that the ALJ consider daily activities such as driving, walking and household chores. This allows the Secretary to juxtapose the claimant's subjective allegations of pain with the relative intensity of his daily regimen.") (internal citations omitted). Accordingly, because the ALJ's decision "contains specific, clear reasons for [her] credibility determination that are supported by record evidence," Perry v. Colvin, 2014 DNH 198, 7, the court finds no error.

### D. Step five

Finally, Robitaille argues that the ALJ erred when she posed a hypothetical question to the vocational expert that was based upon the allegedly erroneous RFC. Having concluded that the ALJ's RFC determination was proper and supported by substantial evidence in the record, the court finds no error.

### IV. Conclusion

For the reasons just explained, the ALJ's conclusion that Robitaille is not disabled is supported by substantial evidence in the record. Robitaille's motion to reverse the SSA's

decision[1] is DENIED and the Acting Commissioner's motion to affirm[2] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 20, 2016

cc:  Raymond J. Kelly, Esq.
     Terry L. Ollila, AUSA

---

[1]Document no. 8.

[2]Document no. 9.